UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:

MAQ MANAGEMENT, INC., *et al.*,   Case No.: 11-26571-BKC-EPK
                                  (Jointly Administered)
             Debtors.             Chapter 11 Cases
_____/

MAQ MANAGEMENT, INC., a Florida
Corporation; SUPER STOP PETROLEUM,   Adv. No.: 11-02283-ADV-EPK
INC., a Florida Corporation; SUPER STOP
PETROLEUM I, INC., a Florida Corporation;
SUPER STOP PETROLEUM, IV, Inc., a
Florida Corporation,
             Plaintiffs,
v.

BRANCH BANKING AND TRUST
COMPANY, a North Carolina corporation,

             Defendant.
_____/

## DEFENDANT'S, BRANCH BANKING AND TRUST COMPANY, MOTION TO DISMISS ADVERSARY COMPLAINT AS MOOT

Defendant, Branch Banking and Trust Company ("BB&T") by and through its undersigned counsel, moves to dismiss Plaintiffs' Verified Complaint For Declaratory Relief, Temporary Restraining Order And A Permanent Injunction Enjoining State Court Actions Against Affiliates, Guarantors and Officers (the "Complaint") and in support thereof states:

## BACKGROUND

**A. The State Court Action**

1.  In 2009, BB&T filed an action in the Ninth Circuit in and for Orange County, Florida, Case No.: 09-CA-35158 (the "State Court Action"), to foreclose and

collect debts against the following entities: MAQ Management, Inc., Super Stop Petroleum, Inc., Super Stop Petroleum I, Inc., Super Stop Petroleum IV, Inc. (collectively, the "Debtors" or the "Plaintiffs"), and Mahammad A. Qureshi ("Qureshi"), an individual.

2. Qureshi is the President of each of the Debtors and is the guarantor on various liabilities owed by the Debtors to BB&T.

3. The State Court Action is currently pending in the Ninth Circuit in and for Orange County, Florida.

**B. The Debtors' Bankruptcy Action**

4. On June 15, 2011 (the "Petition Date"), just days before the trial in the State Court Action was scheduled to begin,[1] the Debtors each filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.[2]

5. On June 17, 2011, the Court entered an order granting the joint administration of the Debtors' bankruptcy cases. [Main Dkt. 11]. (the "Debtors' Bankruptcy Action").

6. On June 16, 2011, the Debtors filed a motion in the Debtors' Bankruptcy Action to enjoin state court actions against affiliates, guarantors, and officers of the Debtors. [Main Dkt. 8].

7. On June 17, 2011, BB&T filed its response to the Debtors' motion to enjoin state court actions. [Main Dkt. 9]. BB&T argued that the Debtors' motion to

---

[1] The trial in the State Court Action was set to begin on June 21, 2011.

[2] The bankruptcy cases filed by the individual debtors include: MAQ Management, Inc. Case No.: 11-26571-BKC-EPK; Super Stop Petroleum, Inc. Case No.: 11-26572-BKC-EPK; Super Stop Petroleum I, Inc. Case No.: 11-26573-BKC-PGH; and Super Stop Petroleum IV, Inc. Case No.: 11-26574-BKC-PGH.

2

enjoin state court action was improper because the commencement of an adversary proceeding was required for such relief.

8.     On June 30, 2011, the Court entered an order denying the Debtors' motion to enjoin state court actions. [Main Dkt. 35].

**C.  The Adversary Complaint**

9.     On June 22, 2011 (the "Adversary Petition Date"), the Plaintiffs filed their Complaint commencing this adversary proceeding. [Adv. Dkt. 1]. Pursuant to Section 105(a) of the Bankruptcy Code, the Complaint seeks temporary and permanent injunctive relief against BB&T from continuing the State Court Action against affiliates, guarantors, and officers of the Debtors.

10.    On June 22, 2011, the Debtors also filed an Emergency Motion For A Temporary Order Restraining The Continuation Of State Court Action Against Affiliates, Guarantors and Officers of the Debtors (the "Motion"). [Adv. Dkt. 2]. On June 28, 2011, the Court entered an order denying the Debtors' Motion. [Adv. Dkt. 7].

11.    Based on the Complaint itself, the Debtors' Schedules, and the hearing held in the Debtors' Bankruptcy Action on the motion to enjoin state court actions against affiliates, guarantors, and officers of the Debtors, the only individual for whom the Complaint appears to seek 105(a) injunctive relief is Qureshi.

12.    The relief sought in the Complaint, however, is moot because Qureshi has filed an individual Chapter 11 petition and, therefore, has already availed himself of the "automatic stay" protections provided under Section 362 of the Bankruptcy Code.

**D. Qureshi's Bankruptcy Action**

13. On July 10, 2011, Qureshi filed a petition under Chapter 11 of the Bankruptcy Code, Case No. 11-29148-EPK.

14. Qureshi's bankruptcy case is currently pending in the Southern District of Florida, before this Court.

## ARGUMENT

15. As discussed below, the Plaintiffs' Complaint should be dismissed for the following reasons: (1) the relief sought in the Complaint is moot; and (2) the Plaintiffs cannot prove the elements required for injunctive relief, as a matter of law.

**A. The Relief Sought In The Complaint Is Moot**

**I. Mootness Standard**

A case becomes moot when the issues are no longer live or the parties lack a legally cognizable interest in the outcome. *In Re Roberts*, 291 Fed.Appx. 296, 298 (11th Cir. 2008). Central to a finding of mootness is a court's determination that it cannot grant effective judicial relief. *In Re Winn-Dixie Store, Inc.*, 286 Fed.Appx. 619, 623 (11th Cir. 2008). Further, dismissal of a moot case is required because mootness is jurisdictional. *In Re Roberts*, 291 Fed.Appx. at 298 (quoting *Sierra Club v. Envtl. Protection Agency*, 315 F.3d 1295, 1299 (11th Cir. 2002)).

Additionally, when a proceeding is subject to a Section 362 automatic stay, then 105(a) injunctive relief determination is unnecessary. *In re Olympia Holding Corp.*, 161 B.R. 524, note 3 (M.D. Fla. 1993). *See also In Re First Alliance Mortgage Company*, 264 B.R. 634, 651 (C.D. Cal. 2001) (finding that when the automatic stay functions as an injunction against certain actions, then there is no need for 105(a) relief as to those

4

actions); and *Value America v. Kamena*, 265 B.R. 717, 720 (W.D. Va. 2001) (finding that 105(a) allows bankruptcy courts to "enjoin the continuation of ongoing judicial and administrative proceedings which are excepted from the automatic stay").

**II. Qureshi's Bankruptcy Action Renders the Complaint Moot**

Upon filing his Chapter 11 bankruptcy petition, Qureshi availed himself of the "automatic stay" of Section 362 of the Bankruptcy Code. As a result, the State Court Action was automatically stayed as to Qureshi upon the commencement of his bankruptcy case. Therefore, the issues raised in the Plaintiffs' Complaint are no longer live because Qureshi has already received the relief the Plaintiffs now seek. See *In Re Roberts*, 291 Fed.Appx. at 298 (finding that a case is moot if the issues involved are not live). That is, due to the "automatic stay", BB&T has already discontinued the State Court Action as to Qureshi. This Court, therefore, cannot grant effective judicial relief because such relief has already been granted through Qureshi's bankruptcy action. *See In Re Winn-Dixie*, 286 Fed.Appx. at 623 (finding that the mootness determination turns on whether the court can grant effective judicial relief). Accordingly, the Section 105(a) injunctive relief sought in the Plaintiffs' Complaint is now moot because the Section 362 "automatic stay" protections have already been applied to hault the State Court Action.[3]

Moreover, because the "automatic stay" has been applied to the State Court Action, it is unnecessary to now determine whether Section 105(a) injunctive relief is needed because such relief is appropriate only when the proceeding at issue is not subject

---

[3] In this regard, BB&T questions why the Plaintiffs are continuing to pursue a 105(a) injunction with respect to Qureshi. BB&T is concerned that Qureshi may have filed his petition for an improper purpose. That is, Qureshi may have filed bankruptcy to avoid legitimate collection efforts against him in the State Court Action until the completion of the 105(a) hearing in this adversary proceeding. Qureshi would have filed bankruptcy with no actual intent to seek reorganization under Chapter 11, but only with the intent to delay the entry of judgment against him in the State Court Action.

to the Section 362 "automatic stay". *See, e.g., In re Olympia Holding Corp.*, 161 B.R. at note 3 (finding that a 105(a) injunctive relief determination with respect to a show cause proceeding would be unnecessary if the show cause proceeding were already subject to the Section 362 automatic stay); *In Re First Alliance Mortgage Company*, 264 B.R at 651 (finding that there would be no need for a court to enjoin certain governmental actions outside of bankruptcy by using its 105(a) authority if the automatic stay applied to those actions).

Additionally, the only plausible explanation for maintaining this adversary proceeding is so that, in the event Qureshi's bankruptcy case is dismissed, the Debtors could continue to pursue relief under Section 105(a).[4] However, even if Qureshi's bankruptcy case is dismissed at some point, Qureshi could always file a new adversary proceeding, again seeking 105(a) injunctive relief. Nonetheless, the concern over a *potential* dismissal does not change the fact that the Complaint is now moot. *See In Re Olympia Holding Corp.*, 161 B.R. at 532 (finding that the lower court erred in extending a 105(a) injunction to proceedings that had not been initiated or contemplated, but were a mere possibility). Accordingly, the Plaintiffs' Complaint should be dismissed as moot.

**B.  Failure To Meet the Requisite Elements For An Injunction**

Even if this Court does not find that the relief sought in the Plaintiffs' Complaint is moot, dismissal of the Complaint is still proper because the Plaintiffs cannot prove entitlement to injunctive relief as required by Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Bankruptcy Rules.

---

[4] This is not to suggest that dismissal of Qureshi's bankruptcy case will occur. In fact, dismissal of Qureshi's bankruptcy case is not even sought at this time. Further, dismissal of Qureshi's bankruptcy case is largely in Qureshi's own control in that as long as Qureshi complies with the Bankruptcy Code, there is no reason why dismissal should occur.

### I. Injunctive Relief Standard under Federal Rule 65 and Bankruptcy Rule 7065

Temporary restraining orders and permanent injunctions, such as those sought by the Plaintiffs in this case, are "extraordinary and drastic remedies." *In re Regency Realty Associates*, 179 B.R. 717, 720 (Bankr. M.D. Fla. 1995). *See also In re Costa and Head Land Company*, 68 B.R. 296, 304 (Bankr. N.D. Ala.1986). The party seeking injunctive relief carries a heavy burden as to each element required by Rule 65 and adopted by Bankruptcy Rule 7065. Specifically, the party seeking injunctive relief must show: (1) that the party seeking injunctive relief will suffer irreparable injury unless an injunction issues; (2) that the threatened injury to the movant outweighs any damage the injunction may cause the opposing party (3) a substantial likelihood of success on the merits; and (4) that the injunction would not adversely affect the public interest. *Id*. *See Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985); and *Callaway v. Block*, 763 F.2d 1283, 1287 (11th Cir. 1985). As discussed below, the Plaintiffs cannot show that each element required for injunctive relief is met as a matter of law. Accordingly, dismissal of the Complaint is proper as a matter of law.

### II.  No Irreparable Harm

Federal Rule 65 and Bankruptcy Rule 7065 require a showing that the party seeking injunctive relief will suffer irreparable harm unless injunctive relief is granted. Further, mere speculation of irreparable harm is insufficient to entitle the Plaintiffs to injunctive relief. *In Re Phar-Mor, Inc. Securities Litigation*, 166 B.R. 57, 64 (W.D. Pa. 1994) (stating, "mere speculation…does not constitute the type of proof required to entitle the Debtors to an injunction"); *Dore & Associates Contracting, Inc. v. American Druggists' Ins. Co*., 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985) (stating, "when it is

alleged that irreparable harm to the debtor's reorganization will result it is necessary to present strict proof of facts and circumstances proving the likelihood of irreparable harm. Speculative and conclusory allegations are clearly insufficient."). In this case, no irreparable harm would result from the denial of the relief sought because the State Court Action has already been stayed as a result of Qureshi's bankruptcy action.[5]

Upon the filing of Qureshi's individual Chapter 11 bankruptcy petition, the Section 362 "automatic stay" applied to prevent the continuation of the State Court Action. *See Carver v. Carver*, 954 F.2d 1573, 1576 (11th Cir. 1992) (finding that the Section 362 automatic stay provision stays *all* proceedings against the debtor or the debtor's property during the pendency of the bankruptcy proceedings); *In Re Albany Partners, Ltd.*, 749 F.2d 670, note 9 (11th Cir. 1984) (explaining that that automatic stay stops all collections efforts and all foreclosure actions). As such, the Plaintiffs will suffer no irreparable injury by the denial of 105(a) injunctive relief because the State Court Action has already been stayed.

In the same regard, injunctive relief is improper because Qureshi has already availed himself of an adequate remedy at law by filing individual Chapter 11 bankruptcy and by attaining the "automatic stay" protections granted as a result of such filing. *See, e.g.*, *In Re River Family Farms, Inc*., 85 B.R. 816, 819-20 (Bankr. N.D. Iowa 1987) (finding that injunctive relief for corporate officers of the debtor was inappropriate when the officers had the option to file individual bankruptcy as an adequate remedy at law).

---

[5] The Complaint appears to allege the Debtors will suffer "irreparable harm" in that the State Court Action prevents Qureshi from focusing his efforts and resources on the Debtors' reorganization. Interestingly, however, nothing has occurred in the State Court Action that would substantially occupy Qureshi's time or efforts.

8

Therefore, as a matter of law, no "irreparable harm" will result if 105(a) injunctive relief is denied because an adequate remedy at law has already been granted.

### III.  Damage Caused to BB&T by the Injunction Outweighs Injury to Plaintiffs

Federal Rule 65 and Bankruptcy Rule 7065 also require balancing the threatened harm to the party seeking injunctive relief with any damage the injunctive relief would cause to the opposing party.  Here, the Plaintiffs would suffer no injury if the injunctive relief is not granted because the State Court Action has already been stayed by Qureshi's Chapter 11 bankruptcy filing.  As such, it is obvious that the greater harm would be caused to BB&T through an entry of injunctive relief because (1) BB&T may have grounds for relief from the Section 362 "automatic stay" and/or for the dismissal of Qureshi's bankruptcy case, but a 105(a) injunction could preclude such relief; and (2) BB&T will be forced to continue to spend time and money unnecessarily litigating the issue of injunctive relief in this action when the relief sought has already been granted by the "automatic stay".

More importantly, in light of the fact that the State Court Action has already been stayed, the Plaintiffs' pursuit of Section 105(a) injunctive relief is a waste of already taxed judicial resources.  As already discussed, Qureshi can re-file an adversary proceeding if his bankruptcy case is dismissed.  At this point, however, there is no point in wasting the Court's time and resources seeking relief that has already been granted by the "automatic stay" in Qureshi's bankruptcy case.  Accordingly, the Plaintiffs have failed to meet the elements required for injunctive relief and the Complaint should, therefore, be dismissed as a matter of law.

9

## IV. No Substantial Likelihood of Success on the Merits

Rule 65 and Bankruptcy Rule 7065 also require that the party seeking injunctive relief provide a clear and specific showing of likely success on the merits. *Dore & Associates Contracting, Inc.,* 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985). To satisfy this element in an adversarial bankruptcy proceeding, the party seeking injunctive relief must show that there is a "probability of successfully effectuating a plan of reorganization". *In Re Costa and Head Land Company*, 68 B.R. 296, 299 (Bankr. N.D. Ala.1986); and *In the Matter of Dore & Associates Contracting, Inc.,* 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985). A "probability of successfully effectuating a plan of reorganization" requires more than mere "pie in the sky" speculation. Instead, it requires "a careful and factually supported predetermination of the probability of a successful reorganization." *In Re Costa and Head Land Company*, 68 B.R. at 301.

Further, in cases where a guarantor seeks a preliminary injunction, "probability of success on the merits" has been held to mean that the guarantor must show a probability that the debtor's plan will provide for 100% payment of the underlying obligation. *Id.* Here, the Plaintiffs' Complaint makes no showing of any probability of a successful reorganization under Chapter 11 and certainly provides no evidence of 100% payment of the obligations owed to BB&T. Instead, the Debtors' Schedules demonstrate a lack of the likelihood of plan confirmation.

In this regard, the Debtors have virtually no available cash.[6] This is especially alarming because, for the past two years, the Debtors have not made any payments to BB&T or, upon information and belief, to the vast majority of their other secured

---

[6] The Debtors have each indicated on their Schedule B that they have zero cash on hand. Further, the minimal amount of cash the Debtors do have in their checking and/or saving accounts is likely subject to lender liens.

creditors. Further, the real property interests listed by the Debtors on Schedule B are misleading. For example, MAQ Management, Inc. lists on its Schedule B a "50% interest in FLOVEST, LLC" in the amount of ten million dollars ($10,000,000.00). Interestingly, FLOVEST, LLC is a related but non-filing debtor that is currently in a foreclosure proceeding with BB&T. In that case, there is no equity in the property.

Given the Debtors' lack of cash on hand, it is hard to imagine how the Debtors will set forth a confirmable plan for reorganization. As such, the Plaintiffs' Complaint and Schedules make no showing of success on the merits. Therefore, injunctive relief should not be granted as a matter of law.

### V. The Injunction Would Adversely Affect the Public Interest

Finally, pursuant to Rule 65 and Bankruptcy Rule 7065, injunctive relief is only proper when granting such relief will not be adverse to the public interest. This element requires a balancing of the public interest in successful bankruptcy reorganizations with competing social interests. *Dore & Associates*, 54 B.R. at 359. Specifically, in proceedings affecting sureties and guarantors, courts must balance the public interest in the debtor's successful reorganization against the strong public interest in protecting the integrity of surety bonds and related commercial instruments. *Id. See also In Re Page*, 18 B.R. 713, 717 (D.D.C. 1982) (finding that the commercial integrity of letters of credit would be frustrated by a 105(a) injunction which restrained a creditor of the debtor in bankruptcy from cashing a letter of credit).

In this case, the injunctive relief sought is directly adverse to the public interest in protecting the integrity of the credit markets because granting such relief could ultimately materially affect the value of commercial guaranties. If lenders perceive guarantees as

being less valuable, because of the granting of 105(a) injunctions to guarantors in un-unique and routine cases such as this one, this could have an adverse impact on the availability of credit. As such, entering 105(a) injunctions on behalf of guarantors as a matter of course has the potential to devalue guarantees and to, in turn, adversely affect the public interest.

The situation presented in this case is analogous to any other situation in which a guarantor contracts to pay certain liabilities owed by the debtor to its creditor. Here, Qureshi guaranteed to pay the debt owed by the Debtors to BB&T. Thus, until Qureshi filed bankruptcy and availed himself of the Section 362 "automatic stay", BB&T had a legitimate right to expect that the guarantee would be honored and enforced. *See In Re Costa and Head*, 68 B.R. 296 at 303 (stating "the banking and commercial communities have a legitimate right to expect that contracts will be honored and enforced *unless the borrower himself seeks the legitimate protection of the bankruptcy laws*.").

Further, granting 105(a) injunctive relief to guarantors, like Qureshi, would effectively provide such guarantors with the benefits of the Section 362 "automatic stay" without providing creditors with the corresponding protections afforded to them under the Bankruptcy Code. For example, "invoking the jurisdiction of the bankruptcy court assures commitment of the debtor's assets to the satisfaction of his obligations." *In Re River Family Farms, Inc.*, 85 B.R. at 820. Without such control over the beneficiary of a stay, however, there is substantial potential for misconduct. *Id*. Therefore, because 105(a) injunctive relief is devoid of the protections of the Bankruptcy Code, granting a 105(a) injunction would leave creditors vulnerable to misconduct. Accordingly, injunctive relief in this case is improper as a matter of law because such relief would

adversely affect the public interest in protecting creditors and the integrity of the credit markets.

**WHEREFORE**, Defendant, BB&T, respectfully requests that this Court enter an Order dismissing Plaintiffs' Complaint as moot and granting any further relief this Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic or U.S. mail to all parties on the attached service list and by regular U.S. mail to: David Lloyd Merrill, 777 S. Flagler Drive, Phillips Point, West Tower, Suite 800, West Palm Beach, FL 33401; MAQ Management, Inc., 4800 North Federal Highway, Suite 200E, Boca Raton, FL 33421; Super Stop Petroleum I, Inc., 4800 North Federal Highway, Suite 200E, Boca Raton, FL 33431; Super Stop Petroleum IV, Inc., 4800 North Federal Highway, Suite 200E, Boca Raton, FL 33431; and Super Stop Petroleum, Inc., 4800 North Federal Highway, Suite 200E, Boca Raton, FL 33431 on this 21st day of July, 2011.

                                                                                /s/ Kevin A. Reck
Kevin A. Reck (FL Bar No. 0505552)
kreck@foley.com
FOLEY & LARDNER LLP
111 North Orange Avenue
Suite 1800
Orlando, FL 32801-2386
Tel: 407.423.7656
Fax: 407.648.1743

Attorneys for Branch Banking and Trust Company

**SERVICE MATRIX**

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Iberia Bank
P.O. Box 20509
West Palm Beach, FL 33416-0509

1st National Bank of South Florida
1550 North Krome Avenue
Homestead, FL 33030

BNK Real Estate, LLC
19766 Dinner Key Drive
Boca Raton, FL 33498

Fifth Third Bank
200 East Robinson Street, Tenth Floor
Orlando, FL 32801

First State Bank of Arcadia
P.O. Box 1400
Arcadia, FL 34265

Florida Leasehold Acquisitions, LLC
1255 River Road
Edgewater, NJ 07020

Giant Oil Company
1806 North Franklin Street
Tampa, FL 33602

Iberia Bank
P.O. Box 20509
West Palm Beach, FL 33156

NAFH
9350 South Dixie Highway
Suite 1120
Miami, FL 33156

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

Pacific Assets Management
15841 SW 56 ST
Fort Lauderdale, FL 33331

Premier Bank
1790 Main Street
Sarasota, FL 34236

Wauchula State Bank
106 East Main Street
Wauchula, FL 33873

/s/ Kevin A. Reck
Kevin A. Reck